UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re:<br><br>ELLICOTT SPRINGS RESOURCES, LLC,<br><br>Debtor.<br>_____<br><br>SPRINGS EAST LAND COMPANY, LLC,<br>and<br>ELLICOTT SPRINGS LAND<br>COMPANY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AUDRA GOSS;<br>DAVID DEAN GOSS; and<br>MATTHEW GOSS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Bankruptcy Case No.<br>10-13116-SBB<br>Chapter 7<br><br><br><br><br><br><br><br><br><br>Adversary Proceeding No.<br>12-01518-SBB |

**APPEARANCES:**

Christopher J. Conant, Esq.                    Chad S. Caby, Esq.
J. Bradley Olsen, Esq.                              Rothgerber Johnson & Lyons, LLP
Hatch Ray Olsen Sandberg LLC              1200 17th Street, Suite 3000
730 Seventeenth Street, Suite 200           Denver, CO 80202-5855
Denver, CO 80202                                    COUNSEL FOR SPRINGS EAST
COUNSEL FOR AUDRA GOSS,                LAND COMPANY, LLC AND
DAVID DEAN GOSS, AND                       ELLICOTT SPRINGS LAND
MATTHEW GOSS                                     COMPANY, LLC

**MEMORANDUM OPINION AND ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS ADVERSARY PROCEEDING (DOCKET #17), (2) GRANTING THE MOTION FOR AUTHORITY AND STANDING TO PROSECUTE CAUSES OF ACTION ON BEHALF OF THE DEBTOR (DOCKET #18), AND (3) HOLDING MATTER IN ABEYANCE IN ACCORDANCE WITH 11 U.S.C. § 305 AND 28 U.S.C. § 1334**

THIS MATTER came before the Court on November 20, 2012, for an evidentiary hearing regarding:

(1)     Motion to Dismiss Adversary Proceeding Pursuant to FED. R. BANKR. P. 7012

and FED. R. CIV. P. 12(b)(1) filed by Audra Goss, David Dean Goss, and Matthew Goss (together "Defendants" or "Goss Family") on September 14, 2012,[1] and Response thereto filed by Springs East Land Company, LLC and Ellicott Springs Land Company (together "Springs Land Company") on September 28, 2012.[2]

(2)   Springs Land Company's Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor filed on September 28, 2012,[3] and Defendants' Response filed on October 15, 2012.[4]

The Court, having reviewed the pleadings and the within case file, and having considered the evidence presented to the Court, makes the following findings of fact and conclusions of law, and enters the following Order.

I.   **Summary**

This is a case where the Chapter 7 Trustee manages the assets of the debtor, which assets include two valuable water wells, the rights to which the Trustee is selling to Springs Land Company. Springs Land Company in this adversary proceeding is, with the approval and joinder of the Trustee, seeking injunctive relief against the Defendants (the surface rights land owners) for their unauthorized use of water from the estate's water wells. Springs Land Company and the Trustee both seek the injunctive relief against the Defendants barring them from further wrongful use of the water wells on a temporary and permanent basis. Defendants, by way of challenging standing of Springs Land Company to bring this action, oppose the granting of the permanent injunction. The Court concludes that it has subject matter jurisdiction to hear and decide the within matter as long as the water wells are property of the bankruptcy estate. But, the Court will abstain and shall refrain from entering a permanent injunction against the Defendants because that would extend beyond the existence of this case and inappropriately control the relationship and rights of two non-debtor parties, the purchaser Springs Land Company and the Defendants, the surface rights land owners, after the wells are no longer property of the bankruptcy estate.

II.   **Findings**

Ellicott Springs Resources, LLC (the "Debtor") filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 19, 2010 (the "Petition Date"). In addition to the Debtor's bankruptcy filing, affiliates and/or related parties Ellicott Springs Development, LLC, PLW, Inc., and Rodney J. Preisser also filed petitions for

---

[1]   Docket No. 17 in this adversary proceeding.

[2]   Docket No. 19 in this adversary proceeding.

[3]   Docket No. 18 in this adversary proceeding.

[4]   Docket No. 23 in this adversary proceeding.

2

relief under Chapter 11 of the Bankruptcy Code on the same date.[5]

On March 31, 2010, the Court entered an Order jointly administering the four bankruptcy cases, naming the individual Chapter 11 bankruptcy case of Rodney J. Preisser as the lead bankruptcy case.[6]

Thereafter, on December 2, 2010, Springs Land Company, in the jointly administered bankruptcy cases, filed its Motion for Order Appointing Chapter 11 Trustee and Memorandum of Points and Authorities.[7]

On January 10, 2011, only days prior to the trial on the Trustee's Motion, the Debtor filed its Statement of No Objection to Motion by Springs Land Company for Order Appointing a Chapter 11 Trustee for Ellicott Springs Resources, LLC Pursuant to 11 U.S.C. § 1104(a)(2).[8]

On January 11, 2011, the Court entered an Order Granting Motion by Springs Land Company for Order Appointing Chapter 11 Trustee.[9]

On January 20, 2011, the Court entered its Order Approving United States Trustee's Appointment of Chapter 11 Trustee, thereby appointing Joseph G. Rosania, Esq. as the Chapter 11 Trustee of the Debtor.[10]

The Debtor's bankruptcy case (the "Bankruptcy Case") was subsequently converted to a case under Chapter 7 of the Bankruptcy Code on July 29, 2011.[11] Joseph G. Rosania (the "Trustee") was appointed the Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Bankruptcy Estate").

On August 14, 2012, Springs Land Company filed its Verified Complaint for Temporary Restraining Order and Preliminary and Permanent Injunction (the "Verified

---

[5] See *Rodney J. Preisser*, Bankruptcy Case No. 10-13110-SBB; *PLW, Inc.*, Bankruptcy Case No. 10-13114-SBB; and *Ellicott Springs Development, LLC*, Bankruptcy Case No. 10-13116-SBB. When referencing docket entries below, the Court shall identify the specific bankruptcy case and docket number therein.

[6] See Docket No. 44 in Bankruptcy Case No. 10-13110-SBB.

[7] See Docket No. 231 in Bankruptcy Case No. 10-13110-SBB.

[8] See Docket No. 260 in Bankruptcy Case No. 10-13110-SBB.

[9] See Docket No. 79 in Bankruptcy Case No. 10-13116-SBB (this is a copy from Bankruptcy Case No. 10-13110-SBB). The joint administration of the cases was subsequently vacated by Order of this Court on January 11, 2011 as reflected in Docket No. 263 in Bankruptcy Case No. 10-13110-SBB.

[10] See Docket No. 86 in Bankruptcy Case No. 10-13116-SBB.

[11] See Docket No. 125 in Bankruptcy Case No. 10-13116-SBB.

3

Complaint") against Defendants.

Since the Trustee's appointment, the Trustee investigated the Debtor's Bankruptcy Case, including the Debtor's assets and liabilities. Based on the Trustee's investigation, the Trustee determined that it was in the best interest of the estate to sell to Springs Land Company any and all assets of the Bankruptcy Estate free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(b) and (f).

In furtherance of the Trustee's desire to sell the Debtor's assets to Springs Land Company, the Trustee filed a Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b) and (f) Free and Clear of Liens, Claims, Interests, and Encumbrances (the "Sale Motion").[12] The Sale Motion requested the Court's approval to sell any and all assets of the Bankruptcy Estate to Springs Land Company, or its assignee, in part for: (a) the release of Spring Land Company's judgment against the Bankruptcy Estate in the amount of $2,336,252.85; and (b) the payment of $50,000.00.

The Court approved the proposed sale of Debtor's assets to Springs Land Company after a hearing on December 6, 2012. The Court further entered its Order Approving Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b) and (f) Free and Clear of Liens, Claims, Interests, and Encumbrances in the underlying case on December 7, 2012, *nunc pro tunc,* December 6, 2012 ("Sale Order").[13] The closing of the sale is anticipated to occur within 45 days from the date of the Sale Order, or on or before January 22, 2013.

Included in the assets (and the most valuable of the assets) to be sold by the Trustee to Springs Land Company are certain water rights known as Benton Well 1 (Permit No. 11197 FP) ("Benton Well 1") and Benton Well 2 (Permit No. 17075 FP) ("Benton Well 2") (Benton Well 1 and Benton Well 2 are together referred to as the "Benton Wells"). The Defendants own the real property upon which the Benton Wells are located.

In relation to the Benton Wells, on or about April 25, 2012, the Trustee executed certain Requests to Register in the Water Conservation Program Colorado Ground Water Commission (the "Conservation Requests"). The Conservation Requests have been filed with the Colorado Ground Water Commission. The Conservation Requests provide, in pertinent part, that "[Trustee] plan[s] no/low withdrawal of water from the [Benton Wells] during the current calendar year. As owner of this well, I request that water withdrawal during this calendar year be excluded from any future estimate of average annual historic use for this well. I understand that I can not withdraw this request and that this request is valid only for the current calendar

---

[12]  *See* Docket No. 145 in Bankruptcy Case 10-13116-SBB.

[13]  The hearing was conducted on December 6, 2012 as reflected in the Minutes of Proceeding docketed in the underlying bankruptcy case, Case No. 10-13116-SBB, as Docket No.166. The Order Approving Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b) and (f) Free and Clear of Liens, Claims, Interests, and Encumbrances is docketed in the underlying bankruptcy case as Docket No.167.

year."[14]

Prior to and after the filing of the Conservation Requests, the Goss Family, the Trustee, and Springs Land Company had attempted to enter into a well usage agreement whereby the landowners of the property on which the Benton Wells are located, the Goss Family, sought water usage on their land and crops. However, the parties were unable to come to terms on said agreement.

Specifically, beginning in the summer of 2011, Springs Land Company's agent, Simon Malk (in his role as agent for the proposed buyer) ("Mr. Malk"), engaged in negotiations with the Defendants to arrive at terms concerning a potential "well usage agreement" whereby the Defendants would be allowed to use the water in the Benton Wells on a long-term basis. The Defendants and Springs Land Company were not able to a reach an agreement and negotiations came to an impasse in June 2012.[15]

Mr. Malk testified and stated in the Springs Land Company's Complaint that he negotiated with the Defendants concerning a well usage agreement for the Benton Wells and even exchanged several term sheets with the Defendants. Other than the Trustee's verbal approval and authorization to negotiate a well usage agreement with the Goss Family, there is no indication in the record that Mr. Malk had formal authority to negotiate the use of the Benton Wells 1 and 2 as they were, then, estate assets and therefore owned and controlled by the Debtor's Bankruptcy Estate and the Trustee.[16] In spite of the negotiations, neither the Trustee nor Mr. Malk were able to come to an agreement with the Goss Family with respect to their use of the water from the Benton Wells.

Thereafter, the Goss Family began actively and unilaterally using the Benton Wells for irrigation of their farm crops without the Trustee's and/or this Court's authorization and without remuneration to the Bankruptcy Estate. Pursuant to the Affidavit of Tim Volz, P.E., of URS Corporation, attached to the Verified Complaint which was admitted as an exhibit at the evidentiary hearing, Springs Land Company asserts that, as of July 20, 2012, the Goss Family has used 262.04 acre feet of well water from the Benton Wells.

Springs Land Company asserts that on or about August 6, 2012, it contacted the El Paso County Sheriff's Office regarding the unauthorized use of the Benton Wells. On the same date, a Deputy of the El Paso County Sheriff's Office indicated the Sheriff's Office would need a court order in order for the El Paso County Sheriff to take any action against the Goss Family to shut down their unauthorized use of the Benton Wells.

---

[14] Conservation Requests, p. 1.

[15] Verified Complaint at ¶¶ 15-17.

[16] Id.

5

Springs Land Company, as the prospective purchaser of the Debtor's assets including the Benton Wells, asserts that is has been authorized by the Trustee to bring this action against the Goss Family in order to prevent the further diminution of Bankruptcy Estate assets, namely the unauthorized use of the Benton Wells. The Trustee has executed an Affidavit indicating his consent to Springs Land Company's requested injunctive relief and further testified at the evidentiary hearing in this matter that he supports Springs Land Company's requested relief.

On August 14, 2012, at 3:45 p.m., this Court entered a Temporary Restraining Order in the within adversary proceeding precluding the Goss Family from using the Benton Wells for any reason whatsoever.[17] Thereafter, Springs Land Company sought a preliminary injunction pursuant to FED. R. CIV. P. 65(a) to prevent further dissipation of the Debtor's assets pending the sale of the Debtor's assets to Springs Land Company and pending a full determination on the merits of Springs Land Company's claims against the Defendants. Pursuant to a Stipulation between Springs Land Company and the Goss Family, on August 28, 2012, this Court entered an Order Granting Preliminary Injunction.[18] That injunction prohibited the Goss Family from any further use of the water from the Benton Wells until further Court Order.

At the November 20, 2012 hearing in this matter, Defendants through their counsel represented to this Court that they have no present or future intention of using the Benton Wells or the water rights associated with the Benton Wells without prior approval from the Trustee or this Court.

At the November 20, 2012 hearing, the Trustee testified that he consented to Springs Land Company filing Springs Land Company's Complaint for a temporary restraining order and injunctive relief on behalf of the Debtor's estate because (a) Springs Land Company had indicated that it wanted the requested injunction against the Defendants in contemplation of Springs Land Company's purchase of the Benton Wells and (b) Springs Land Company was willing to pay the Trustee for the Benton Wells. Thus, the Trustee was willing to allow Springs Land Company to assert an estate cause of action.

The Trustee further testified that his counsel had been contacted by the Defendants to settle this adversary proceeding and to negotiate usage of the Benton Wells but the Trustee did not engage in such discussions with the Defendants and instead instructed the Defendants to contact Springs Land Company concerning these matters. The Trustee testified that he did not engage in settlement or well usage discussions with the Defendants because he believed that doing so might disrupt Springs Land Company's contemplated purchase of the Benton Wells as reflected in the Trustee's pending Sale Motion.

Based on the Trustee's testimony, the Court concludes and finds that the Trustee delegated certain important matters concerning Benton Wells—including the request for

---

[17] Docket No.4 in this adversary proceeding.

[18] Docket No.15 in this adversary proceeding.

injunctive relief—to Springs Land Company because Springs Land Company is willing to abandon its $2.3 million claim against the estate and to pay the estate $50,000.00 if Springs Land Company successfully purchases the Benton Wells upon this Court granting the Sale Motion. Moreover, the Trustee does not want to do anything to potentially disrupt Springs Land Company's willingness to purchase the Benton Wells.

As for the value of the Benton Wells and usage of the water from the Benton Wells, there is inconsistent testimony, some confusion and uncertainty. The Trustee maintains that he approves of the within action to obtain an injunction in order to preserve the asset in the Benton Wells, the water, and avoid further dissipation of that property of the estate by the unauthorized use of the water by the Goss Family. The Goss Family argues that—through the complicated and sometimes mysterious laws and regulations of Colorado water law—using the water, now, actually increases the value of the water in the future. Both position are not without some logic and persuasiveness. However, the value of the water, whether used or conserved, is not particularly relevant to the issue before the Court—the alleged unauthorized use of an estate asset and injunctive relief to prevent it.

Based on the testimony of Mr. Malk, the Trustee, and the relief sought by Springs Land Company in its Verified Complaint, the Court finds and concludes that in this adversary action Springs Land Company seeks a *permanent* injunctive order from this Court against the Defendants to enjoin them from using the Benton Wells even *after* Springs Land Company closes on the sale and acquires those assets from the Debtor's bankruptcy estate and are no longer subject to the *in rem* jurisdiction of this Court (see 28 U.S.C. § 1334(e)). Thus, the Court finds that Springs Land Company has sought relief from this Court, in large measure, to resolve a dispute between two non-debtor parties (Springs Land Company and the Goss Family) and to aid Springs Land Company in its post-purchase use and enjoyment of the Benton Wells.

### III. Discussion

#### A. Subject Matter Jurisdiction

As discussed below, at the time this matter was presented to the Court, Court had (and continues to have) jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(1)(A), and (O), because this matter pertains to the administration of this estate and disposition of assets of the estate. This is properly filed as an adversary proceeding consistent with FED. R. BANKR. P. 7001(7). Venue is proper in the United States Bankruptcy Court for the District of Colorado pursuant to 28 U.S.C. § 1409(a).

The Defendants have challenged this Court's subject matter jurisdiction under FED. R. CIV. P. 12(b)(1). Consequently, this Court must address this challenge before it can rule on the

Plaintiff's Motion for Standing.[19] If the Court lacks subject matter jurisdiction, then it must dismiss this action.

In this case, the Goss Family requests that the Court dismiss this adversary proceeding pursuant to FED. R. CIV. P. 12(b)(1) (as incorporated by FED. R. BANKR. P. 7012). FED. R. CIV. P. 12(b)(1) provides, in relevant part: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (1) lack of subject-matter jurisdiction . . . ."

Pursuant to Tenth Circuit legal authority, when interpreting a motion to dismiss under Rule 12(b)(1), a court should analyze the following standards when addressing a motion to dismiss under Rule 12(b)(1):

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.[20]

---

[19] *Edmond v. Clements*, 2012 WL 2523077, at *5 (D. Colo. Jan. 19, 2012) (subject matter jurisdiction is the first question in every case and if the Court lacks jurisdiction it must proceed no further) *report and recommendation adopted by Edmond v. Clements*, 2012 WL 2523057 (D. Colo. June 29, 2012); *see also, Espinoza v. Maurer*, 2010 WL 865946, at *1 (D. Colo. Mar. 5, 2010); *Colorado Cross-Disability Coalition v. Abercrombie and Fitch Co.*, 2010 WL 3155508, at *1 (D. Colo. Aug. 9, 2010).

[20] *Holt v. U.S.* 46 F.3d 1000, 1002-03 (10th Cir. 1995)(citations omitted).

Moreover, "[t]he party asserting the existence of subject matter jurisdiction . . . bears the burden of proving such jurisdiction exists."[21] Based on these legal standards, the Court will examine the parties' respective positions.

Motions to dismiss under FED. R. CIV. P. 12(b)(1), generally take one of two forms: "(1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenged to the actual facts upon which subject matter jurisdiction is based."[22] With the exception of the standing argument, discussed below, there does not appear to be a facial attack on the sufficiency of the complaint's allegation as to subject matter jurisdiction. Moreover, it is not disputed that there is an ongoing bankruptcy proceeding and that subject matter jurisdiction exists consistent with 28 U.S.C. § 1334 as the claims raised relate to the administration of the bankruptcy estate and disposition of estate assets therefrom.

### B. Standing and Dismissal

In this matter, Springs Land Company seeks derivative standing to continue to prosecute this action against the Goss Family. The Goss Family seeks dismissal of Springs Land Company's Complaint based on the assertion that Springs Land Company does not have standing to prosecute the action because: (1) the Trustee is the real party in interest and (2) Springs Land Company did not receive the permission of the Court prior to filing its action.

The Defendants rely substantially on *In re Dorland* to support their position that Springs Land Company lacks standing to prosecute this matter and that only the Trustee may pursue these claims of the estate.[23] As this Court held in *In re Dorland*, as a *general* rule, a Chapter 7 trustee is the authorized party to file claims on behalf of the estate.[24] However, *Dorland* is distinguishable on its facts from this case. The context and character of *Dorland* is markedly different from these circumstances. A Chapter 7 defendant/debtor asserted counterclaims, or setoff claims, against a plaintiff/creditor who commenced a nondischargeability adversary proceeding against him under 11 U.S.C. § 523(a)(4). Therein, the debtor's putative claims—neither listed as an asset of the estate by the debtor nor disclosed at any time by the debtor—were held to be an asset of the estate and not properly claimed and prosecuted, unilaterally and without the trustee's approval, by the debtor. Moreover, *Dorland* involved a debtor asserting claims to recover funds purportedly for the estate, not as in this proceeding where the effort is to protect dissipation of an estate asset and diminution of the value of that asset by non-debtor, non-creditor, third-parties, the Goss Family.

---

[21] *Mitchell v. Alcorn*, 2010 WL 865855, at *3 (D. Colo. Mar. 8, 2012).

[22] *Id.*, (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)(which, in turn, cites to *Holt v. United States*, 46 F.3d 100, 1002-03 (10th Cir. 1995)).

[23] *In re Dorland*, 374 B.R. 765 (Bankr. D. Colo. 2007).

[24] *Id.*, at 774-75.

Several circuit level courts have "found an implied but qualified right under certain circumstances for creditors, through 'derivative standing,' to pursue . . . claims that otherwise belong exclusively to the trustee . . . ."[25] Although the Tenth Circuit has yet to weigh in on this precise issue, the court in *Terra Bentley* cited above saw "no reason to believe the Tenth Circuit would disagree with the unanimous view of the Circuits that have decided the question" that creditors have the ability to request derivative standing to prosecute estate causes of action.[26]

Furthermore, the Tenth Circuit in prior opinions has suggested *in dicta* that such standing should be available: "[A] creditors' committee or even an individual creditor may, with leave of the bankruptcy court, initiate avoidance or other actions when the debtor-in-possession has failed to do so."[27] More recently, the Tenth Circuit commented that it is "among those courts to allow a committee to bring" an action, and that "other circuits have continued to allow committees to bring avoidance actions."[28]

Courts have found that a creditor requesting derivative standing must generally demonstrate two things: (I) the creditor has the consent of the trustee; and (ii) the bankruptcy court finds that the suit is (a) in the best interest of the bankruptcy estate; and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.[29]

In this case, from the evidence submitted at the evidentiary hearing, it is clear that the

---

[25]    *In re Terra Bentley II, LLC*, 2011 WL 808190, at *4 (Bankr. D. Kan. Mar. 2, 2011) ("In *In re Racing Servs., Inc.* [540 F.3d 892 (8th Cir. 2008)], the Eighth Circuit joined the Second, Third, Fifth, Sixth, Seventh, and Ninth Circuits in recognizing an implied right for a creditor or a creditors' committee to be granted permission to pursue avoidance actions on behalf of the bankruptcy estate . . . ."); *see, generally, In re STN Enterprises*, 779 F.2d 901 (2d Cir. 1985); *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001); *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64 (2d Cir. 2002).

[26]    *Terra Bentley* 2011 WL 808190, at *4 (citing to *Racing Servs.*, 540 F.3d at 898 (which, in turn, is citing *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir. 2005) (creditors' committee may be granted standing to pursue cause of action when debtor-in-possession's refusal to do so was unjustifiable); *Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548, 553 (3d Cir. 2003) (*en banc*) (derivative standing available to creditors' committee when debtor-in-possession's refusal to pursue avoidance action was unreasonable); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000) (trustee's refusal to pursue claim must be unjustifiable for creditor to be granted derivative standing to pursue it); *Avalanche Maritime, Ltd., v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999) (creditors had standing to bring avoidance action where Chapter 7 trustee agreed and bankruptcy court approved agreement); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1440–46 (6th Cir. 1995) (creditor can be granted permission to pursue avoidance action if debtor-in-possession's refusal to do so was unjustified); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247–52 (5th Cir. 1988) (creditors' committee could be granted derivative standing to sue corporate debtor's officers on behalf of corporation where debtor's refusal to do so was unjustified).

[27]    *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 821 (10th Cir. 1996).

[28]    *In re MS55, Inc.*, 477 F.3d 1131, 1139 n.9 (10th Cir. 2007).

[29]    See *Racing Servs.*, 540 F.3d at 898 (citing *Commodore*, 262 F. 3d at 99-100).

Trustee provided his express consent to Springs Land Company to file, maintain, and prosecute this action. As set forth in the Rosania Affidavit, which was attached to the Verified Complaint, the TRO and Preliminary Injunction Motion, and which was referenced in the Court's Preliminary Injunction Order, of which the Court takes judicial notice, the Trustee testified as follows:

> Until the Sale Motion is approved and the Bankruptcy Estate consummates the sale of the Debtor's assets to Springs Land Company, the Bankruptcy Estate has little to no assets to use to attempt to prohibit the Goss Family's unauthorized use of the Benton Wells.
>
> Accordingly, I have consented to Springs Land Company bringing the above captioned Adversary Proceeding (and to Springs Land Company filing motions requesting a temporary restraining order and preliminary and permanent injunction) against the Goss Family in order to prevent the further diminution of Bankruptcy Estate assets, namely the unauthorized use of the Benton Wells.
>
> Springs Land Company's action for a Temporary Restraining Order and Preliminary and Permanent Injunction is in the best interests of the Bankruptcy estate and is necessary and beneficial to the fair and efficient resolution of the Debtor's Bankruptcy Case.[30]

The Trustee testified similarly at the hearing in this matter.

    Furthermore, the Eighth Circuit, addressing a similar case, found that "[l]ike the Second Circuit, we are persuaded by the reasoning of *In re Spaulding Composites*, and hold that a creditor may proceed derivatively when the trustee (or debtor-in-possession) consents (or does not formally oppose) the creditor's suit."[31] Accordingly, under the facts of this case, the Court finds the Trustee's ability to consent, as well as his actual consent in this case to allow Springs Land Company to file and prosecute the above-captioned action against the Goss Family, did indeed occur. Therefore, Springs Land Company has met its burden of demonstrating that the Trustee consented to this action being filed on the Bankruptcy Estate's behalf.

    The remaining questions relate to Springs Land Company's authority and standing to prosecute this action and specifically revolve around whether this Court's subsequent approval

---

30    *Rosania Affidavit*, p. 2, ¶¶ 10-12.

31    *Racing Servs.* 540 F.3d at 902 (citing *Commodore Int'l Ltd.*, 262 F. 3d 96, 99-100 (2d Cir. 2001); *In re Spaulding Composites*, 207 B.R 899, 904 (B.A.P. 9th Cir. 1997); *In re Parmetex Inc.*, 199 F.3d 1029, 1031 (9th Cir. 1999).

11

of the Trustee's decision to allow Springs Land Company to file the within adversary proceeding is permitted. As set forth above, the Court must determine that the suit is (a) in the best interest of the Bankruptcy Estate; and (b) necessary and beneficial to the fair and efficient resolution of the underlying bankruptcy proceeding.[32] Based on the evidence elicited at the evidentiary hearing, the Court finds that the action is in the best interest of the Bankruptcy Estate. Mr. Rosania testified that he believed preventing the Goss Family from dissipating assets of the Bankruptcy Estate was in the best interest of creditors because the assets, including the Benton Wells, were likely going to be sold to Springs Land Company and the sale would result in both (a) the release of Spring Land Company's judgment lien against the estate in the amount of $2,336,252.85, and (b) the payment of $50,000.00 in cash which could be used to pay the administrative expenses of the Chapter 7 and 11 bankruptcy estates as well as allow the Trustee to pay a small dividend to creditors.

The Court similarly finds that the action filed by Springs Land Company against the Goss Family is also necessary and beneficial to the fair and efficient resolution of the Bankruptcy Case. As testified to by the Trustee and Mr. Malk (Springs Land Company's Manager) at the evidentiary hearing, the Bankruptcy Estate could not come to an agreement with the Goss Family on the use of the Benton Wells. Due to the impasse between the Goss Family and the Trustee, it appears the Goss Family simply began converting water from the Bankruptcy Estate for their own use to the detriment of the Bankruptcy Estate and its creditors. Although it is unclear the exact value of the water that was converted by the Goss Family prior to this Court's Temporary Restraining Order and subsequent Order Granting Preliminary Injunction, it is clear, based on the Affidavit of Tim Volz attached to the Verified Complaint, that significant and valuable water assets were depleted from the Bankruptcy Estate, all without permission or remuneration to the Bankruptcy Estate.[33]

Additionally, Mr. Malk testified at the evidentiary hearing and in his Affidavit attached to the Verified Complaint that the El Paso County Sheriff would not assist in stopping the Goss Family from their unauthorized use of the Benton Wells unless the Sheriff was provided with a Court Order. Therefore, the Court finds that this action was necessary and benefitted the Bankruptcy Estate by stopping the unauthorized dissipation of estate assets, without which the Goss Family would have almost certainly continued their dissipation of estate assets.

However, the Goss Family asserts that even if the Trustee is determined to have consented to the filing of the action and the action is in the best interest of creditors and is necessary and beneficial to the Bankruptcy Estate, nevertheless, Springs Land Company does not

---

[32] See *Racing Servs, Inc.*, 540 F.3d at 898 (citing *Commodore Int'l*, 262 F. 3d at 99-100).

[33] See Affidavit of Tim Volz in Support of Expedited Motion for *Ex Parte* Temporary Restraining Order and Subsequent Preliminary Injunction (attached to the Complaint and TRO and Preliminary Injunction Motion) (the "Volz Affidavit") ("Based on the [Benton Well] readings, the usage of Benton Well 1 since the last reading in 2011 was 24.70 acre/feet as of July 20, 2012. . . . Based on these readings, the usage of Benton Well 2 since the last reading in 2011 was 237.34 acre/feet as of July 20, 2012. . . As of July 20, 2012, 262.04 acre feet of water have been used from the Benton Wells.").

have the necessary standing required to have filed the Verified Complaint because it failed to receive this Court's authority *prior to* filing the action. While the Court agrees that attaining the Court's approval prior to the filing of a derivative action is the preferred path in almost all circumstances and matters of this type, the timeline of events in this case precluded Springs Land Company from filing and maintaining this action against the Goss Family with this Court's immediate and prior approval. The Bankruptcy Estate had no money, no counsel, no ability to hire an attorney, and the asset—the water—was being unlawfully extracted from the Benton Wells and the value of the asset was surreptiously being depleted and diminished.

Moreover, in the *Racing Services* case, the Eighth Circuit Court of Appeals addressed a similar situation and overruled a Bankruptcy Appellate Panel's finding that a creditor's request to proceed derivatively must be made prior to the action being filed, stating:

> In most cases, regardless of whether a creditor seeks permission before or after filing its complaint, the bankruptcy court will expend similar resources when considering the creditor's request to proceed derivatively. The BAP nevertheless believed that "[r]equiring court approval prior to allowing a creditor to file a derivative suit furthers the goal of efficiency by weeding out unnecessary suits before they are filed." Not only is this observation far from self-evident, but it confuses the effect of filing a suit with the effect of its prosecution-only the latter threatens the efficient administration of the bankruptcy estate. Because a creditor may not prosecute a derivative suit without the bankruptcy court's permission, the filing of an adversary complaint in itself does not affect the estate's administration. In other words, the timing of the creditor's motion is in most cases of little consequence. The BAP's proposed rule is also inconsistent with the practice of numerous federal courts granting creditors retroactive permission (*i.e.*, *nunc pro tunc* relief) to file a derivative adversary complaint...
>
> We see no reason to demand formalistic adherence to a rule that could result in "needless dismissals and refilings." And as one bankruptcy court recognized, equity may demand granting retroactive derivative standing because of extenuating circumstances.[34]

The Eighth Circuit ultimately determined "that a creditor (or creditor's committee) may obtain derivative standing to pursue . . . actions under circumstances in which the trustee (or debtor-in-possession) either unjustifiably refuses to bring the creditor's proposed claims or

---

[34] *Racing Servs.*, 540 F.3d at 903-04.

consents to the creditor pursuing such claims in his stead. *We also hold that the bankruptcy courts may retroactively grant a creditor derivative standing.*"[35]

Although the Court is aware of the Fourth Circuit's opinion in *In re Baltimore Emergency Servs. II Corp.*, which stands for the proposition that "consent must occur before, not after, the action is filed,"[36] the Fourth Circuit's reasoning is contrary to a host of other appellate courts that have determined first that derivative standing is allowed, and second that such standing, under certain circumstances, may be sought and granted retroactively.[37]

Furthermore, this Court's reading of *Baltimore Emergency Services* indicates that, although the court issued what appears to be a bright-line test, *i.e.*, no derivative standing in all circumstances, in *Baltimore Emergency Services* the creditor offered no testimony relating to the debtor's consent to the action being filed derivatively.[38] Second, the court found that the "bankruptcy court did not determine that this suit was either 'in the best interest of the bankruptcy estate' or 'necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.'"[39] Whether *Baltimore Emergency Services* would have been decided differently under the facts of this case is unknown; however, it certainly is distinguishable from the testimony set forth at the evidentiary hearing in this matter where, unlike the creditor in *Baltimore Emergency Services*, Springs Land Company demonstrated the requisite elements for derivative standing.

Accordingly, the Court finds that the Motion for Authority and Standing to Prosecute filed by Springs Land Company is authorized and permitted on a retroactive basis, especially under the particular circumstances of this case, where there appears to have been a continuous and unabated taking of Bankruptcy Estate property which could not be stopped by the Trustee without the immediate assistance of Springs Land Company. Exigent circumstances, wasting (or theft) of estate assets (water), need for immediate action, and express authorization of the Trustee, in this unique case, justified Springs East Land Company's standing to commence this action.

Based on the Court's discussion above, the Court finds that Springs Land Company is authorized to file and maintain this action against the Goss Family on a derivative basis. For these reasons, the Court shall grant the Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor. The Court shall also deny the Motion to Dismiss, as the Court finds the Plaintiff has standing to bring this action on behalf of the Bankruptcy Estate.

---

[35]   *Racing Servs.*, 540 F.3d at 903-04 (emphasis added).

[36]   *In re Baltimore Emergency Servs. II, Corp.*, 432 F.3d 557, 563 (4th Cir. 2005).

[37]   *See, e.g., Racing Servs.*, 540 F.3d at 903-04.

[38]   *See Baltimore Emergency Servs.*, 432 F.3d at 562.

[39]   *Id.* at 563.

14

### C. Discretionary Abstention

The Court further concludes, upon considering the evidence before the Court, that discretionary abstention from this proceeding is appropriate. Specifically,

> In a case where a court is not required to abstain under 28 U.S.C. § 1334(c)(2), it may use its discretion to abstain from hearing a case where the interest of the bankruptcy court in adjudicating the matter is outweighed by other factors.[40]

Courts apply the following non-exclusive factors to a discretionary abstention analysis:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presences of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presences in the proceeding of nondebtor parties.[41]

In analyzing the relevant factors, many are met.

---

[40] *Lucre Mgmt. Grp., LLC, v. Schempp Real Estate, LLC (In re Schempp Real Estate, LLC)*, 303 B.R. 866 (Bankr. D. Colo. 2003).

[41] *Id.* Discretionary abstention is differentiated from mandatory abstention in that the analysis of mandatory abstention as found in 28 U.S.C. § 1334(c)(2) includes the following six requirements:

> (1) A party files a timely motion; (2) the proceeding is based on a state law claim; (3) the proceeding is a "related to" proceeding; (4) there is no basis for federal jurisdiction other than section 1334; (5) an action is pending in state court; and (6) the state court action can be timely adjudicated.

*Id.,* at 871.

First, abstention from imposing a permanent injunction between these two non-debtor parties extending long after the property is sold and no longer estate property, facilitates efficient administration of this estate and avoids entangling and questionable exercise of authority by the Court. State law—specifically, water rights—are at issue. Here, the respective interests and relative right of these two non-debtor parties to the Benton Wells' water, especially after the sale of the rights, will be largely governed by the unique and arcane water laws of the State of Colorado as determined by special Colorado courts and with respect to which this Bankruptcy Court has little knowledge or expertise.

Second, the issue necessarily requires an examination of state water law issues and these are not commonly dealt with in bankruptcy court. For this Court to impose on a non-debtor party, the Goss Family, in favor of a non-debtor party, Springs Land Company, a *permanent* injunctive relationship would tend to preempt or supercede the predominant applicable state law.

Third, the jurisdictional basis of this matter is at best tenuous, as it involves, primarily, but not exclusively, two non-debtor parties. While this Court most certainly has jurisdiction over property of the Debtor's estate—which includes authority to assist in preserving the value and protecting the integrity of the asset *while it is an asset of the estate*—it does not have jurisdiction over the property once it is sold and *is no longer property of the estate*.

Fourth, the relief sought most likely does not become relevant until *after* the sale as proposed by the Trustee. The existing preliminary injunction entered by the Court, as agreed to by the parties by stipulation, suffices to protect the asset while it is property of the Bankruptcy Estate.

Fifth, this Court's docket is burdened with many bankruptcy cases and adversary proceedings. Consideration of this matter between two non-debtor parties when this Court has many other matters that need attention and, which are more fully before this Court, is a disservice to debtors and creditors and is contrary to public policy and judicial efficiency.

Consequently, this Court will not dismiss this matter, but it will hold this matter—with respect to the consideration of a permanent injunction—in abeyance consistent with 11 U.S.C. § 305 and 28 U.S.C. § 1334(c)(1) to permit the parties to continue to work to a resolution of this matter or proceed before the proper state judicial entity.

## IV.  Order

IT IS THEREFORE ORDERED that the Motion to Dismiss Adversary Proceeding pursuant to FED. R. CIV. P. 12(b)(1) is DENIED.

IT IS FURTHER ORDERED that the Motion for Authority to Prosecute Causes of Action on Behalf of the Debtor is GRANTED.

IT IS FURTHER ORDERED that this matter will be held in abeyance consistent with 11 U.S.C. § 305 and 28 U.S.C. § 1334(c)(1) to permit the parties to continue to work to a resolution of this matter or proceed before the proper state judicial entity.

Dated this 9th day of January, 2013.

BY THE COURT:

*Sid Brooks*

Sidney B. Brooks,
United States Bankruptcy Judge